IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>$39,900.00 in U.S. Currency,<br><br>Defendant in Rem. | No. 3:23-CV- |

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

Pursuant to Supplemental Rule G(2) of the Federal Rules of Civil Procedure, the United States of America alleges this *in rem* complaint for forfeiture against $39,900.00 in U.S. currency ("Defendant Property"):

## NATURE OF THE ACTION

**1.** This is a forfeiture action under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C). The United States seeks the forfeiture of the Defendant Property, because it is moneys furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and/or property intended to facilitate such an exchange in violation of 21 U.S.C. §§ 841(a) and/or 846. The Defendant Property is also subject to forfeiture under 18 U.S.C. § 981(a)(1)(C), because it was property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952, a specified unlawful activity as defined in 18 U.S.C. §§ 1957(c)(7) and 1961(1).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1345 and 1355(a), and in rem jurisdiction is proper under 28 U.S.C. § 1355(b).

3. Venue in this Court is proper under 28 U.S.C. §§ 1355(b)(1)(A) and 1391(b), because acts or omissions giving rise to the forfeiture occurred in the Northern District of Texas and a substantial part of the events giving rise to the forfeiture occurred in the Northern District of Texas.

## PARTIES

4. The Plaintiff is the United States of America.

5. The Defendant Property is $39,900.00 in U.S. currency. The Defendant Property was seized from Kentrell Harris at DFW Airport, Texas, on October 5, 2022. On October 7, 2022, it was deposited into a Loomis bank account in Dallas, Texas.

6. Kentrell Harris, a resident of Monroe, Louisiana claimed the Defendant Property on January 6, 2023 and sought judicial referral.

## FACTS

7. The factual basis for the forfeiture in this case involves an investigation by the DEA Dallas Airport Interdiction Group ("DEA Task Force") at DFW Airport ("DFW"). One of the DEA Task Force's responsibilities at DFW is to investigate the use of the airport and the airlines that service the airport to perpetrate or facilitate the illegal transportation of proceeds obtained from criminal conduct including drug trafficking.

8. Those trafficking in illegal narcotics must often find a way to transport the proceeds of their criminal conduct without drawing the attention of law enforcement. Air travel is one mode used by the traffickers or couriers working for or with them to transport such proceeds. The use of air travel allows drug traffickers to keep their ill-gotten gains "off the books" and outside the banking system, which they know is regularly monitored by banking and governmental authorities.

9. Investigators with the DEA Task Force are specially trained and learn by experience how to identify those who are using the federal aviation system to facilitate narcotic trafficking.

10. On October 5, 2022, DEA Task Force members including TFO Mark Adams, TFO Eric LaCross and Little Elm Police Officer Josh Carlson were conducting interdiction operations on American Airlines flight 2855 flying from DFW to Los Angeles, California.

11. TFO LaCross identified a gray, hard-sided suitcase emitting an odor of dryer sheets, which agents and officers are aware is commonly used to mask the odor of narcotics. The suitcase had a bag tag displaying the name Kentrell Vashaun Harris.

12. TFO LaCross and TFO Adams notified LEPD Officer Carlson that they had identified some bags for an open-air sniff with a certified narcotics odor detection canine.

13. LEPD Officer Carlson is a certified handler of Bacara, a specially trained canine. Bacara is a certified narcotics odor detection canine. Both are certified by the

National Narcotic Detector Dog Association. Bacara can detect the odors of four controlled substances including marijuana, cocaine, heroin, and methamphetamine.

14. LEPD Officer Carlson observed Bacara give a positive alert for the presence of an odor of narcotics during an open-air sniff on the luggage belonging to Kentrell Harris.

15. After the positive canine alert, TFO LaCross and TFO Adams took custody of the suitcase and went to the top of the jet bridge to attempt to speak with Harris.

16. While standing at the American Airlines counter at Gate D2, TFO Adams observed the name Harris come across the screen as a boarding pass was scanned. TFO Adams approached the passenger believed to be Kentrell Harris and verbally identified himself with his name and badge.

17. TFO Adams asked if he could speak to the passenger, and he agreed.

18. TFO Adams asked the passenger to see his boarding pass and identification, which he provided. Harris was identified by his Louisiana ID card.

19. TFO Adams asked Harris a series of questions about his travel. Harris confirmed he was flying from DFW to Los Angeles on American Airlines flight 2855. Harris explained that he was traveling to California for a week, although his return flight was scheduled for Saturday, October 8, 2022.

20. TFO Adams asked Harris if he was carrying any large amounts of U.S. currency and Harris stated he had about $40,000 in his suitcase. TFO Adams asked what

Harris intended to use the cash for, and Harris explained he was going to buy some clothes.

21.  Harris told TFO Adams that he got the money from cryptocurrency accounts and that he withdrew the money from the bank. TFO Adams asked Harris if he had any receipts from the bank, and Harris displayed a crypto currency account, but could not show any receipts or evidence of withdrawals from the crypto currency account or from a bank.

22.  TFO Adams asked Harris for consent to search his luggage and Harris gave consent.

23.  TFO LaCross searched Harris's luggage and found three stacks of U.S. Currency inside a sock in the suitcase. Harris told TFO LaCross he thought the money was safer stored that way.

24.  TFO Adams observed there were no money bands on the cash, even though Harris advised he had withdrawn the currency from a bank.

25.  TFO LaCross placed the currency that was found in the sock into a DEA Evidence bag. Certified canine Bacara alerted to the presence of a narcotic odor on this currency.

26.  TFO LaCross swabbed the lining of Harris's suitcase with Mistral D4D, and it revealed a positive result for the presence of cannabis.

27. TFO Adams seized the U.S. currency and gave Harris a copy of the DEA-12 receipt for the currency.

28. The money seized from Harris totaled $39,900.00. In the officers' experience, possession of such a large amount of currency is not typical of legitimate airport travelers.

29. After the seizure, officers ran system checks which revealed that Harris has a criminal history including multiple charges of possession with intent to distribute controlled substances.

[remainder of page intentionally left blank]

## FIRST CAUSE OF ACTION
### 21 U.S.C. § 881(a)(6)
**(forfeiture of property related to drug trafficking)**

1. The United States reasserts all allegations previously made.

2. Under 21 U.S.C. § 881(a)(6), "moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of" 21 U.S.C. § 801 et seq. are subject to forfeiture.

3. Under 21 U.S.C. § 841(a), it is "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." An attempt or conspiracy to do the same is also prohibited by 21 U.S.C. § 846.

4. As set forth above, the Defendant Property is moneys furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and/or property intended to facilitate such an exchange in violation of 21 U.S.C. §§ 841(a) and/or 846. This property is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

**SECOND CAUSE OF ACTION**
**18 U.S.C. § 981(a)(1)(C)**
**(forfeiture related to violation of the Travel Act)**

5. The United States reasserts all allegations previously made.

6. Under 18 U.S.C. § 981(a)(l)(C), any property which constitutes or is derived from proceeds traceable to an offense constituting a "specified unlawful activity," or a conspiracy to commit such offense, is subject to forfeiture to the United States.

7. Under 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1), interstate travel or transportation in aid of racketeering enterprises in violation of 18 U.S.C. § 1952 is a specified unlawful activity.

8. 18 U.S.C. § 1952(a) prohibits, inter alia, any individual who uses "any facility in interstate or foreign commerce,":

> with the intent to –
>
> (1) distribute the proceeds of any unlawful activity; or [ ]
> (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity"

from thereafter performing or attempting to perform the conduct described in subparagraphs (1) and (3) above.

9. 18 U.S.C. § 1952(b) specifically includes within the definition of "unlawful activity" "any business enterprise involving . . . narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act)."

10. As set forth above, the Defendant Property is property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952. This property is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(l)(C).

## REQUEST FOR RELIEF

WHEREFORE, the United States respectfully asserts that the Defendant Property is forfeitable to the United States under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

The United States further requests:

A. That, pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Rule G(3)(b)(ii), the Clerk of the Court issue a Summons and Warrant of Arrest *in Rem* as to the Defendant Property.

B. That Notice of this action be given to all persons known or thought to have an interest in or right against the Defendant Property;

C. That a Judgment of Forfeiture be decreed against the Defendant Property;

D. That upon the issuance of a Judgment of Forfeiture, the United States Marshals Service or its delegate be able to dispose of the Defendant Property according to law; and

E. That the United States receives its costs of court and all further relief to which it is entitled.

DATED this 22nd day of May, 2023.

                LEIGHA SIMONTON
                UNITED STATES ATTORNEY

                */s/ Elyse J. Lyons*
                Elyse J. Lyons
                Assistant United States Attorney
                Texas Bar No. 24092735
                1100 Commerce Street, Third Floor
                Dallas, Texas 75242-1699
                Telephone: 214-659-8774
                Facsimile: 214-659-8805
                Elyse.lyons@usdoj.gov

                ATTORNEY FOR PLAINTIFF

## VERIFICATION

I am a Task Force Officer (TFO) with the Drug Enforcement Agency (DEA). As a TFO with the DEA, my duties and responsibilities include participating in the investigation and prosecution of persons who violate federal laws.

I have read the contents of the foregoing Complaint for Forfeiture *In Rem* and verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual statements contained therein are true and correct to the best of my knowledge and belief.

Executed on this  22   day of May 2023.

/s/ *Mark Adams*
TFO Mark Adams
Drug Enforcement Agency