IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:23-cv-01168-N |
| | § | |
| $39,900 in U.S. Currency, | § | |
| | § | |
| Defendants in Rem. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court in this civil *in rem* forfeiture action are the following *pro se* Motions filed by Claimant Kentrell Harris: (1) "Motion to Suppress Evidence" (ECF No. 10); (2) "Motion to Set Aside Forfeiture" (ECF No. 16); (3) "Motion to Release of Property" (ECF No. 17); (4) "Summary Judgment" (ECF No. 19); (5) "Petition to Release Seized Property" (ECF No. 20); and (6) "Motion for Speedy Jury Trial" (ECF No. 21). For the following reasons, the Court DENIES the Motions. [1]

---

[1] A magistrate judge lacks authority to determine a motion to suppress evidence in a criminal case or a summary judgment motion, 28 U.S.C. § 636(b)(1)(A). In this case, however, the undersigned disposes of Harris's Motion to Suppress as this is a civil action governed by the Supplemental Rules—not a criminal case—and Harris does not seek to suppress any evidence in a criminal case. Further, the undersigned disposes of Harris's Summary Judgment Motion under the Local Rules and does not address the merits.

**Background**

On October 5, 2022, federal Drug Enforcement Agency (DEA) officers

seized $39,900.00 in U.S. currency from Harris's luggage at DFW Airport.

According to the verified Complaint filed by Plaintiff the United States of

America (the "Government"), the seizure resulted from an interdiction

operation conducted by DEA officers. Compl. ¶ 7 (ECF No. 1).

While surveilling Harris's flight prior to takeoff, officers identified "a

gray, hard-sided suitcase emitting an odor of dryer sheets, which officers

know is commonly used to mask the odor of narcotics. The suitcase bore a

bag tag displaying the name Kentrell Vashaun Harris." *Id*. ¶ 11 (ECF No. 1).

An officer conducted an open-air sniff on the luggage with a certified

narcotics odor detection canine, and he "observed [the dog] give a positive

alert for the presence of an odor of narcotics[.]" *Id*. ¶ 14 (ECF No. 1).

Following the positive alert, the DEA officers took custody of the luggage and

began searching for Harris to conduct further investigation. *Id*. ¶ 15 (ECF

No. 1).

At the terminal for Harris's flight, an officer "observed the name

Harris come across the screen as a boarding pass was scanned [and]

approached the passenger believed to be Kentrell Harris and verbally

identified himself with his name and badge." *Id*. ¶ 16 (ECF No. 1). The officer

asked if he could speak to Harris, and Harris agreed. *Id*. ¶ 17 (ECF No. 1).

Harris provided his boarding pass and identification upon request and answered questions about his travel plans. *Id.* ¶ 18-19 (ECF No. 1).

The officer asked Harris if he was carrying a large amount of money in his luggage, and Harris answered that he had "about $40,000 in his suitcase." *Id.* ¶ 20 (ECF No. 1). Harris told the officer that he obtained the money from a cryptocurrency account and intended to use the money to buy clothes. *Id.* Harris could not show any receipts or evidence of withdrawal from his cryptocurrency account when asked. *Id.* ¶ 21 (ECF No. 1). Finally, the officer asked Harris for his consent to search his luggage, and, according to the Government's verified Complaint, "Harris gave consent." *Id.* ¶ 22 (ECF No. 1).

The officer "found three stacks of U.S. Currency inside a sock[.]" *Id.* ¶ 23 (ECF No. 1). The trained canine on scene alerted to the presence of narcotics on the money. *Id.* ¶ 25 (ECF No. 1). The DEA seized the currency, which ultimately totaled $39,900.00. *Id.* ¶ 27-28 (ECF No. 1).

Later, on May 22, 2023, the Government filed its *in rem* complaint against the seized currency under Supplemental Rule G(2) of the Federal Rules of Civil Procedure. The verified Complaint asserts causes of action under 21 U.S.C. § 881(a)(6), for forfeiture of property related to drug trafficking, and under 18 U.S.C. § 981(a)(1)(C), for forfeiture related to violation of the Travel Act. More specifically, the Government alleges that the currency is "subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6)"

because it is "moneys furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and/or property intended to facilitate such an exchange in violation of 21 U.S.C. §§ 841(a) and/or 846[,]" Compl. ¶ 1 (ECF No. 1), and "subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C)" because it "constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952." *Id.* (ECF No. 1).

To date, Harris has not been indicted.

In response to the Government's Complaint, Claimant Harris, represented by counsel, filed a verified Claim under Supplemental Rule G(5)(a)(i) (ECF No. 6). A few weeks later, Harris filed a *pro se* answer referencing "Chapter 59. Of the Texas code of criminal procedures" (ECF No. 9) and a *pro se* "Motion to Suppress Evidence" invoking "Rule 41(h) of the Federal Rule of Criminal Procedure" (ECF No. 10). The gravamen of these submissions is that the seizure of the Defendant property is unlawful because the officers did not obtain a search warrant and did not have probable cause to search his luggage on October 5, 2022.

Harris's counsel sought and was granted leave to withdraw in August 2023. Mot. (ECF No. 12); Order (ECF No. 14). Thereafter, the District Court referred this case to the United States magistrate judge for pretrial management under 28 U.S.C. §636(b). *See* Order (ECF No. 15).

Then, on September 11, 2023, Harris filed five additional *pro se* Motions—"Motion to Set Aside Forfeiture" (ECF No. 16), "Motion to Release

of Property" (ECF No. 17), "Summary Judgment" (ECF No. 19), "Petition to Release Seized Property" (ECF No. 20), and "Motion for Speedy Jury Trial" (ECF No. 21). The Government did not respond to any of Harris's Motions, and the time for doing so has expired. *See* N.D. Tex. L. Civ. R. 7.1(e).

The Court entered a Scheduling Order (ECF No. 23). Among other things, that Order provides deadlines for the parties to complete discovery (February 15, 2024) and to file dispositive motions, such as summary judgment motions (March 1, 2024). *Id.* The Order also requires Plaintiff's counsel and Claimant to meet and confer by telephone to discuss settlement of this case no later than February 21, 2024.  *Id.* The District Court will set the case for trial by separate order after all dispositive motions have been decided. *Id.*

## Legal Standards and Analysis

Civil forfeiture proceedings, such as this one, are governed by the Supplemental Rules of the Federal Rules of Civil Procedure specially devised for *in rem* proceedings. As the Fifth Circuit explained in *United States v. $4,480,466.16 in Funds Seized from Bank of Am. Acct. Ending in 2653*:

> The forfeiture rules allow a claimant to take numerous actions respecting the seized property, even though the proceeding is "in rem." To begin with, a claimant may "file a claim" to protect his interests in the property. He may also file: (1) an answer to the government's complaint, Supp. Rule G(5)(b); (2) a Rule 12 motion, *id.*; (3) objections to government interrogatories, Supp. Rule G(6)(b); (4) a motion to suppress use of the seized property as evidence, Supp. Rule G(8)(a); and (5) a motion raising a defense under the Excessive Fines Clause of the Eighth

> Amendment, Supp. Rule G(8)(e); *see* also 18 U.S.C. § 983(g) (claimant may file a "petition" to "determine whether the forfeiture was constitutionally excessive"). And the civil forfeiture statute lets claimants do other things, such as: (1) raise and prove an "innocent owner" defense, 18 U.S.C. § 983(d); (2) move to set aside the forfeiture for lack of notice, *id.* § 983(e); and (3) seek immediate release of seized property, *id.* § 983(f).

942 F.3d 655, 660 (5th Cir. 2019) (footnotes omitted).  The Federal Rules of Civil Procedure also apply to this action except to the extent that they are inconsistent with the Supplemental Rules. *United States v. $229,590.00 in U.S. Currency Seized from a Safe in the Home of Dallas Cty. Com'r Price*, 2013 WL 625742, at *2 (N.D. Tex. Feb. 20, 2013). In contrast, the Federal Rules of Criminal Procedure generally do not apply to civil forfeiture proceedings. *United States v. Hernandez*, 911 F.2d 981, 983 (5th Cir. 1990). Also, state law and state rules of procedure do not apply in this federal action.

As noted above, Harris has filed a claim, as well as a *pro se* answer to the Government's verified Complaint. He has also filed several Motions seeking a range of relief under various rules of civil and criminal procedure and state and federal law. The Court addresses these Motions below.

<u>Motion to Suppress Evidence</u>

Harris first moves under Federal Rule of Criminal Procedure 41 to "suppress" evidence seized from his luggage—specifically, the Defendant property and his cellular telephone. Mot. Suppress 1 (ECF No. 10). However,

as noted above, the Federal Rules of Criminal Procedure do not apply to civil forfeiture proceedings. *Hernandez*, 911 F.2d at 983.

To the extent Harris moves to suppress under Supplemental Rule G(8)(a), his request fails on the merits. The Fourth Amendment to the United States Constitution ensures "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "Evidence that was obtained from a 'substantial and deliberate' violation of the Fourth Amendment will be suppressed and excluded from consideration." *United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014) (citing *Franks v. Delaware,* 438 U.S. 154, 171, (1978)).

"The proponent of a motion to suppress has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Kelley,* 981 F.2d 1464, 1467 (5th Cir.1993) (internal quotation marks and citation omitted). Generally, warrantless searches and seizures are considered unreasonable, "subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). Consequently, "if a defendant produces evidence that he was arrested or subject to search without a warrant, the burden shifts to the government to justify the warrantless search." *United States v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993). In other words, "the Government has the burden of proving that

the warrantless search was conducted pursuant to an exception." *United States v. Riley*, 968 F.2d 422, 424–25 (5th Cir. 1992).

In his Motion, Harris argues that his Fourth Amendment rights were violated because the DEA officers searched his luggage without obtaining a search warrant and without establishing probable cause. But he does not address whether an exception to the warrant requirement applied, and more critically, he does not present any allegation—much less evidence—disputing the Government's claim that he consented to the search.

Further, Harris has not met his burden of proving that his Fourth Amendment rights were violated at any point during the DEA investigation. The record before the Court—which consists of the Government's verified Complaint, Harris's verified Claim, and Harris's unsworn Motions—shows that by the time the DEA officers seized Harris's luggage, they had established "reasonable articulable suspicion that [the] luggage contain[ed] contraband or evidence of a crime, [which justified] a limited intrusion or seizure to pursue further investigation[.]"*United States v. Williams*, 365 F.3d 399, 405 (5th Cir. 2004) (citing *United States v. Place,* 462 U.S. 696, 703 (1983)). For example, the Government alleges that prior to seizing Harris's luggage, DEA officers had identified "a gray, hard-sided suitcase emitting an odor of dryer sheets, which agents and officers are aware is commonly used to mask the odor of narcotics." Additionally, before taking custody of Harris's luggage, a trained canine conducted an open-air sniff on

the luggage and gave a positive alert for the presence of narcotics. These observations were sufficient to establish the reasonable suspicion necessary to justify seizing Harris's luggage while officers located Harris for further investigation. *See Williams*, 365 F.3d at 405 ("[A] dog's alert to the presence of narcotics is sufficient to provide probable cause to search."). Harris does not dispute—or, indeed, even address—any of these factual allegations in his Motion to Suppress.

Additionally, Harris's Fourth Amendment protections were not triggered by the open-air sniff of his luggage. *See id.* (citing *Place,* 462 U.S. at 707 ("Submission of luggage to a canine sniff for narcotics does not constitute a Fourth Amendment search.")).

Once the DEA officers began questioning Harris outside the terminal for his flight, the investigation was "reasonably related in scope to the circumstances that justified the stop." *United States v. Roper*, 63 F.4th 473, 477 (5th Cir. 2023) (citing *United States v. Jenson*, 462 F.3d 399, 404 (5th Cir. 2006)). After Harris agreed to speak with the officer, the investigation consisted solely of questions relevant to the purpose of the stop—to determine whether Harris was engaging in illegal activity by transporting currency related to drug trafficking. And the questions, as alleged in the Government's verified Complaint, were clearly aimed at "attempting to dispel [the officer's] reasonable suspicion." *Id.* Harris does not dispute any of the allegations related to this portion of the investigation.

Finally, the verified Complaint alleges that Harris consented to the search. *See United States v. Jaras*, 86 F.3d 383, 388 (5th Cir. 1996) (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973); *United States v. Jenkins,* 46 F.3d 447, 451 (5th Cir.1995)) ("consent is 'one of the specifically established exceptions to the requirements of both a warrant and probable cause.'"). And, again, Harris does not refute the Government's contention in his Motion. Rather, his Motion relies solely on his allegation that the search was conducted without obtaining a search warrant—which is not dispositive of the Court's Fourth Amendment analysis.

By his Motion, Harris also appears to request the Court to compel the Government to produce certain discovery. *See* Mot. at 2 (ECF No. 10) ("Kentrell also contends that the State and DFW Airlines is in possession of evidence, material, and documents that the defendant is entitled to ensure him a fair and impartial trial[.]"). However, Harris has not established that he has made a proper request for any discovery. Therefore, the Court denies his request without prejudice. The parties have until February 15, 2024, to complete discovery. *See* Sched. Order 2 (ECF No. 23).

<u>Motions to Release Property</u>

In his "Motion to Release of Property" (ECF No. 17) and "Petition to Release Seized Property" (ECF No. 20), Harris seeks the return of the Defendant property based on the allegedly unconstitutional nature of the

airport search. The Court denies this request as duplicative of Harris's Answer and Motion to Suppress.

To the extent Harris moves for return of the Defendant property under Rule 41(g) of the Federal Rules of Criminal Procedure, his request is denied. Rule 41(g) provides that a "person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). However, "[r]elief under Rule 41(g) . . . is unavailable if the litigant has an adequate remedy at law and will not suffer irreparable injury if relief is denied." *Haberman v. United States*, 594 F. App'x 264 (5th Cir. 2015) (per curiam) (quoting *United States v. Torres*, 450 F. App'x 361, 362 (5th Cir. 2011)). Because this *in rem* civil forfeiture action provides Harris an adequate remedy at law, he is not entitled to relief in a separate proceeding under Federal Criminal Procedure Rule 41(g). *See United States v. $46,120 in U.S. Currency*, 2023 WL 5242550, at *3 (N.D. Tex. July 25, 2023), *rec. adopted*, 2023 WL 5254650 (N.D. Tex. Aug. 15, 2023).

<u>Motion to Set Aside Forfeiture</u>

Harris also moves under Federal Rules of Civil Procedure 60(b)(1), (3), and (6) to "set aside the forfeiture" of the Defendant Property. *See generally*, Mot. Set Aside (ECF No. 16). But Rule 60(b) provides grounds for relief from "a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b).

Harris is not entitled to relief under Rule 60(b) because the Court has not entered a final judgment.

Motion for Summary Judgment

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *See Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). The movant's burden can be satisfied by demonstrating that there is an absence of evidence which supports the nonmoving party's case for which that party would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets his initial burden, the non-movant must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence[.]" *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

On the record as it stands, it does not appear that Harris can establish the absence of any genuine issue for trial; nor can he demonstrate that he is entitled to judgment as a matter of law. Indeed, Harris has not put forth any evidence at all to establish his claim to the Defendant property. However, because Harris is proceeding *pro se* and the Court's Local Rules allow only

one motion for summary judgment, *see* N.D. Tex. L. Civ. R. 56.2(b), the Court denies without prejudice Harris's request for "Summary Judgment" (ECF No. 19) in order to provide him the opportunity to complete discovery and file dispositive motions, according to the deadlines established in the Scheduling Order.

Motion for Speedy Jury Trial

The Court denies Harris's "Motion for Speedy Jury Trial" under the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161-3174 (ECF No. 21). The Act establishes time limits for completing the various stages of a federal criminal prosecution. *See* 18 U.S.C. § 3161(b) (requiring the Government to file an information or indictment within 30 days from the date the defendant is arrested or served with summons); 18 U.S.C. § 3161(c)(1) (providing that trial must commence within 70 days from the later of the date the information or indictment was filed, or the date the defendant appears before a judicial officer of the court in which the charge is pending). But this civil forfeiture case is not governed by the speedy trial considerations operative in a criminal case. *United States v. Melrose E. Subdivision*, 357 F.3d 493, 503 n. 9 (5th Cir. 2004). The Court's Scheduling Order provides that the District Court will set this case for trial by separate order after all dispositive motions have been decided. *See* Sched. Order 4 (ECF No. 23).

## Conclusion

For the reasons set forth above, the Court DENIES the following Motions filed by Claimant Kentrell V. Harris: (1) "Motion to Suppress Evidence" (ECF No. 10); (2) "Motion to Set Aside Forfeiture" (ECF No. 16); (3) "Motion to Release of Property" (ECF No. 17); (4) "Summary Judgment" (ECF No. 19); (5) "Petition to Release Seized Property" (ECF No. 20); and (6) "Motion for Speedy Jury Trial" (ECF No. 21). The Court denies without prejudice Harris's Motion for Summary Judgment under the Local Rules and does not address the merits.

**SO ORDERED**.

January 16, 2024.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE