IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:23-cv-01168-N-BT |
| | § | |
| $39,900 in U.S. Currency, | § | |
| | § | |
| Defendants in Rem. | § | |
| | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff United States of America brings this civil *in rem* forfeiture action against $39,900 in U.S. currency under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C). Claimant Kentrell Harris asserts that he is the rightful owner of the currency and contests the forfeiture. Before the Court is the Government's Motion to Strike Claim and Answer (ECF No. 25), in which the Government argues Harris lacks standing. For the following reasons, the District Judge should GRANT the Government's Motion, STRIKE Harris's Claim (ECF No. 6) and Answer (ECF No. 9), and DISMISS Harris's claim to the $39,900 in U.S. currency.

## Background

On October 5, 2022, federal Drug Enforcement Agency (DEA) officers seized $39,900.00 in U.S. currency from Harris's luggage at DFW Airport. According to the verified Complaint filed by the Government, the seizure resulted

from an interdiction operation conducted by DEA officers. Compl. ¶ 7 (ECF No. 1). While surveilling Harris's flight prior to takeoff, officers identified "a gray, hard-sided suitcase emitting an odor of dryer sheets, which officers know is commonly used to mask the odor of narcotics. The suitcase bore a bag tag displaying the name Kentrell Vashaun Harris." *Id.* ¶ 11 (ECF No. 1). An officer conducted an open-air sniff on the luggage with a certified narcotics odor detection canine (a "drug dog"), and he "observed [the dog] give a positive alert for the presence of an odor of narcotics[.]" *Id.* ¶ 14 (ECF No. 1). Following the positive alert, the DEA officers took custody of the luggage and began searching for Harris to conduct further investigation. *Id.* ¶ 15 (ECF No. 1).

At the terminal for Harris's flight, an officer "observed the name Harris come across the screen as a boarding pass was scanned [and] approached the passenger believed to be Kentrell Harris and verbally identified himself with his name and badge." *Id.* ¶ 16 (ECF No. 1). The officer asked if he could speak to Harris, and Harris agreed. *Id.* ¶ 17 (ECF No. 1).

Harris provided his boarding pass and identification upon request and answered questions about his travel plans. *Id.* ¶ 18-19 (ECF No. 1). The officer asked Harris if he was carrying a large amount of money in his luggage, and Harris answered that he had "about $40,000 in his suitcase." *Id.* ¶ 20 (ECF No. 1). Harris told the officer that he obtained the money from a cryptocurrency account and intended to use the money to buy clothes. *Id.* Harris could not show any receipts or evidence of withdrawal from his cryptocurrency account when

asked. *Id.* ¶ 21 (ECF No. 1). Finally, the officer asked Harris for his consent to search his luggage, and, according to the Government's verified Complaint, "Harris gave consent." *Id.* ¶ 22 (ECF No. 1).

The officer "found three stacks of U.S. Currency inside a sock[,]" *id.* ¶ 23 (ECF No. 1), and the drug dog alerted to the presence of narcotics on the money. *Id.* ¶ 25 (ECF No. 1). The DEA seized the currency, which ultimately totaled $39,900.00. *Id.* ¶ 27-28 (ECF No. 1).

Later, on May 22, 2023, the Government filed its *in rem* complaint against the seized currency under Supplemental Rule G(2) of the Federal Rules of Civil Procedure. The verified Complaint asserts causes of action under 21 U.S.C. § 881(a)(6), for forfeiture of property related to drug trafficking, and under 18 U.S.C. § 981(a)(1)(C), for forfeiture related to violation of the Travel Act. More specifically, the Government alleges that the currency is "subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6)" because it is "moneys furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and/or property intended to facilitate such an exchange in violation of 21 U.S.C. §§ 841(a) and/or 846[,]" Compl. ¶ 1 (ECF No. 1), and "subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C)" because it "constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952." *Id.* (ECF No. 1).

Harris, represented by counsel, filed a verified Claim under Supplemental Rule G(5)(a)(i) (ECF No. 6). A few weeks later, Harris filed a *pro se* answer referencing "Chapter 59. Of the Texas code of criminal procedures" (ECF No. 9).

In both his Claim and Answer, Harris generally alleges that he is the lawful owner of the currency and the DEA's seizure was illegal because the officers did not obtain a search warrant and did not have probable cause to search Harris's luggage on October 5, 2022. Harris later filed a *pro se* "Motion to Suppress Evidence" invoking "Rule 41(h) of the Federal Rule of Criminal Procedure" (ECF No. 10), in which he continued to argue unlawful seizure. After Harris's counsel was granted leave to withdraw in August 2023, *see* Mot. (ECF No. 12); Order (ECF No. 14), Harris filed five additional *pro se* motions seeking various forms of relief from the Government's intended forfeiture—the undersigned ultimately denied each *pro se* motion by her Memorandum Opinion and Order filed on January 16, 2024. Mem. Op. & Order (ECF No. 24).

In response to Harris's Claim, Answer, and various other filings, the Government sent requests for interrogatories. *See* Fed. R. Civ. P. Supp. R. G(6)(a) ("The government may serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed and before discovery is closed."). Harris responded to the Government's discovery requests by filing a written response with the Court. *See* Notice (ECF No. 18). In his response, Harris invoked his Fifth Amendment right and did not provide any specific answers to the Government's requests. *See id.* at 1 ("[T]he Defendant wishes to exercise his Fifth Amendment Rights to remain silent and not witness against himself to the question asked because the responses is going to be used against him in some form[.]"); *id.* at 3

("Claimant contends that answering any of the interrogatories would be deliberately giving up his Due Process rights not to witness against himself and not to incriminate himself.").

Harris was deposed at the United States Attorney's Office in Dallas on December 19, 2024. Mot. ¶ 21 (ECF No. 25). During the deposition, Harris again invoked his Fifth Amendment right and declined to answer the Government's questions. *See id.*, Ex. A. 4 (Harris stating "I'm pleading the Fifth to all the questions"). More specifically, Harris declined to answer questions about the source of the currency that was seized from him at the airport. *See id.* at 18 (Harris answering "I plead the Fifth" in response to the Government asking about "the source of the $39,900 [he] had at the airport on October 5th"); *id.* at 24 (Harris answering "I plead the Fifth" in response to the Government asking "Is that all money that belongs to you, or had you borrowed any of the money from anyone else?"); *id.* at 25 (Harris answering "I plead the Fifth" in response to the Government asking "Are you willing to explain today the source of the $39,900 that was seized from you at the airport?"). Harris additionally declined to answer the Government's related questions about Harris's state of employment. *See id.* at 5 (Harris "plead[ing] the Fifth" instead of naming a specific job or employer).

After continuing to invoke his Fifth Amendment right, Harris terminated the deposition before the Government concluded asking questions. *See id.* at 28 (attorney for the Government stating on the record that "[w]e came back from a

break and the claimant, Kentrell Harris, indicated that he was no longer cooperating with the deposition and has left the deposition and the building.")

Thereafter, the Government filed the present Motion to Strike Claim and Answer (ECF No. 25). Among other things, the Government argues that Harris fails to establish that he is the true owner of the currency seized, and therefore lacks standing to contest the forfeiture. Harris did not respond to the Government's motion, and the time for doing so has passed. *See* N.D. Tex. L. Civ. R. 7.1(e).

## Legal Standards and Analysis

Civil forfeiture proceedings, such as this one, are governed by the Supplemental Rules of the Federal Rules of Civil Procedure specially devised for *in rem* proceedings. These Supplemental Rules govern when a claimant declares an interest in the named property in a forfeiture complaint. *See* 18 U.S.C. § 983(4)(A). Once a claimant declares an interest in the named property, the government may move to strike a claim or answer, at any time before trial, "because the claimant lacks standing." Fed. R. Civ. P. Supp. R. G(8)(c).

Supplemental Rule G further identifies three procedures for addressing claim standing through a motion to strike—such a motion "may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence." *Id.* at G(8)(c)(ii)(B); *see also* Adv. Comm. Note to Supp. R. G(8)(c)(ii) ("If a claim fails on its face to

show facts that support claim standing, the claim can be dismissed by judgment on the pleadings. If the claim shows facts that would support claim standing, those facts can be tested by a motion for summary judgment.). Here, the Government presents its Motion to Strike as a motion for summary judgment, going beyond the facts asserted in Harris's Claim and Answer and contending that Harris does not present evidence that creates any material dispute that he can establish standing by a preponderance of the evidence.

The burden of establishing standing to contest forfeiture is on the claimant. *Kadonsky v. United States,* 216 F.3d 499, 508 (5th Cir. 2000). To establish standing, "[a] claimant need not prove the merit of his underlying claim." *Id.* Rather, "[i]n order to meet the threshold requirements of standing, a party seeking to challenge the Government's forfeiture of property must demonstrate at least a facially colorable lawful interest in the seized item." *U.S. v. $8,720.00*, 264 F.3d 1140 (5th Cir. 2001).

Here, Harris has failed to establish standing by a preponderance of the evidence. Indeed, Harris has not presented any evidence of his alleged ownership of the seized currency. In his Claim, Answer, and various other filings with the Court, Harris merely asserts—in conclusory fashion, without specificity or context—that he owns the currency. *See* Claim (ECF No. 6) ("Kentrell Harris is the claimant and is the legal owner of the property, $39,900.00 in U.S. Currency, being seized."); Answer (ECF No. 9) ("COMES NOW Kentrell Vashaun Harris (in pro-se capacity) the legal and rightful owner of the $39,900.00 in question That

7

was illegally as well as unconstitutionally confiscated at the DFW Airport[.]"). But in the Fifth Circuit, "a bare assertion of ownership of the *res,* without more, is inadequate to prove an ownership interest sufficient to establish standing." *United States v. $38,570 U.S. Currency*, 950 F.2d 1108, 1112 (5th Cir. 1992). A claimant "must come forth with *some* evidence of his ownership interest in order to establish standing to contest a forfeiture." *Id.*

Harris does not attempt to explain to the Court the basis for his ownership or the source of the currency—much less present the Court with competent evidence to support his assertions of ownership. Harris never identified any legitimate source for the funds, such as a job, and he failed to produce any receipts or evidence of withdrawal from any account. Harris's repeated invocation of the Fifth Amendment "is not a substitute for relevant evidence." *United States v. Rylander*, 460 U.S. 752, 758 (1983). While certainly shielded from incriminating himself, he is not "freed from adducing proof in support of a burden which would otherwise have been his." *Id*; *see also United States v. 2005 Pilatus Aircraft Bearing Tail No. N679PE*, 2015 WL 12839118, at *4 (S.D. Tex. July 16, 2015), *recommendation adopted*, 2016 WL 7230209 (S.D. Tex. Jan. 25, 2016), *aff'd*, 838 F.3d 662 (5th Cir. 2016) ("A civil litigant may invoke his Fifth Amendment rights but must bear the consequences of not presenting evidence in support of his claim."). Ultimately, the Fifth Amendment does nothing to eliminate the burden placed on Harris to establish standing by a preponderance of the evidence.

At most, Harris presents a *prima facie* case of entitlement to the currency. The Fifth Circuit has explained that just "the fact that property was seized from a claimant is prima facie evidence of his entitlement to it[.]" *U.S. v. 8,720.00*, 264 F.3d 1140 (5th Cir. 2001). But a *prima facie* case of entitlement is not the same as establishing standing by a preponderance of the evidence. Indeed, despite the fact that property is seized from a claimant, Fifth Circuit precedent indicates that, nevertheless, the claimant must "come forward with additional evidence of ownership *if* there are serious reasons to doubt his right to the property." *Id.* (quoting *$38,570,* 950 F.2d at 1112 n. 5). The circumstances of the seizure at issue here and the surrounding facts of this civil forfeiture proceeding present reason to doubt Harris's right to the seized currency. For example, Harris's consistent refusal to explain or substantiate his alleged ownership raises legitimate questions regarding the truth of his claim. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them."); *Farace v. Indep. Fire Ins. Co.*, 699 F.2d 204, 210 (5th Cir. 1983) (internal citation omitted) ("[W]hile a person may refuse to testify during civil proceedings on the ground that his testimony might incriminate him, . . . his refusal to testify may be used against him in a civil proceeding[.]"). Harris does not present evidence to dispel the warranted doubt regarding his claim of ownership.

Accordingly, Harris does not meet his threshold burden to establish standing by a preponderance of the evidence.

## Recommendation

The District Judge should GRANT the Government's Motion to Strike (ECF No. 25), STRIKE Harris's Claim (ECF No. 6) and Answer (ECF No. 9), and DISMISS Harris's claim to the $39,900 in U.S. currency.

**SO RECOMMENDED**.

June 10, 2024.

_____

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).